THIRD DEPARTMENT, DECEMBER, 1987

(December 3, 1987)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANGEL L. FERNANDEZ, Appellant.—Levine, J. Appeal from a judgment of the County Court of Ulster County (Vogt, J.), rendered April 10, 1985, upon a verdict convicting defendant of the crimes of manslaughter in the first degree, assault in the second degree and criminal possession of a weapon in the third degree.

At approximately 1:00 A.M. on June 24, 1984, Roberto Ramos was killed and Rafael Cordero was seriously injured by bullets fired by defendant at a nightclub known as the Sunny Acres Villa (hereinafter Villa) in the Town of Plattekill, Ulster County. Earlier in the evening there had been an altercation involving Ramos' stepdaughter, Marylou Ruzzo, and Secundino Urena, a member of the band playing at the Villa on the night in question. Later, there was another quarrel between Urena and Ruzzo's mother, Norma Castro, after she had been informed of her daughter's problems with him.

Soon after, Ramos, Castro and Ruzzo were approaching the stairs on the porch of the Villa when they encountered Urena and other band members ascending the stairs. Defendant, who did not know any of the parties and was unaware of what had transpired between them, was ascending the steps behind Urena when he saw Ramos stare menacingly in his direction. As Ramos approached, defendant drew his gun, apparently believing that Ramos was threatening him. When Ramos continued advancing and his hand moved toward his pocket, defendant fired the gun, injuring Cordero, a bystander, and killing Ramos. A screwdriver was found near Ramos' body.

Defendant fled the scene but was apprehended three days

later in Connecticut. He was indicted and brought to trial on charges of murder in the second degree, assault in the second degree and criminal possession of a weapon in the third degree. After trial the jury rendered a verdict convicting defendant of manslaughter in the first degree, and of the assault and weapon charges. After sentencing, defendant appealed his conviction.

Defendant's first contention on appeal is that the prosecution failed to meet its burden to disprove justification beyond a reasonable doubt. Because all of the witnesses who testified gave different versions of the incident, the jury's determination reflects an assessment of the credibility of the witnesses. Two witnesses testified that they never saw a weapon in Ramos' possession prior to the time he was shot. Thus, there was testimony which, if believed, would have established that defendant either used excessive force under the circumstances or was the initial aggressor (see, Penal Law § 35.15 [1], [2] [a]; see also, People v Goetz, 68 NY2d 96). Moreover, although defendant sought to prove that the area where the confrontation took place was too crowded to permit him to retreat with complete safety, one witness's testimony, that she observed defendant climbing the stairs with ease, two steps at a time, would have permitted the jury to infer that he could have retreated back down the stairs moments later. Based on the foregoing, and viewing the evidence in a light most favorable to the People, there was sufficient evidence to permit the jury to find that defendant's claim of self-defense had been disproved beyond a reasonable doubt.

Defendant also claims that County Court's charge to the jury contained numerous errors, although it is conceded that none was preserved by objection. The only matter which merits our review in the interest of justice is the contention that the jury was not adequately instructed on the applicability of justification to the lesser included homicide offenses. Although the charge in this respect was less than optimal, we cannot say that it clearly gave the erroneous impression that the justification defense applied only to murder in the second degree. But even assuming that the jury was misled by the charge, we find that County Court properly instructed the jury to consider justification in relation to the second count of the indictment, the assault charge. The verdict finding defendant guilty of assault evidences that the jury rejected the defense of justification. Since the issue of self-defense was identical for both the assault and the homicide, we conclude that any

ambiguity in the court's charge on manslaughter was, at most, harmless error.

Defendant also contends that his constitutional rights were violated by the prosecution's failure to turn over exculpatory evidence as required by *Brady v Maryland* (373 US 83). In response to a request for all *Brady* material, the prosecution's bill of particulars disclosed the names of three witnesses who appeared before the Grand Jury and summarized their testimony supporting defendant's claim of self-defense. Thereafter, defendant moved for, *inter alia,* inspection of the Grand Jury minutes. The record contains no ruling by County Court regarding this motion. The prosecution's affidavit in opposition to the motion, however, states that this Grand Jury testimony would be turned over to the defense at the commencement of trial pursuant to CPL 240.45 and there is no indication that this was not done.* Since *Brady* did not create a rule of discovery but only a protection against the denial of a fair trial, where the exculpatory material is turned over to the defense in time to be effectively presented at trial there is no *Brady* violation *(United States v Kaplan,* 554 F2d 577, 579-580; *People v Jones,* 125 Misc 2d 798, 801). In the instant case, there has been no showing that defendant was prejudiced by the prosecutor's conduct or by County Court's failure to order pretrial disclosure of the Grand Jury minutes. Indeed, one of the witnesses, Juan Urena, was called by the defense at trial. The other two witnesses were not called by either side. Significantly, defendant never indicated that he was unsuccessful in attempting to locate or interview these witnesses, nor does it appear that he desired their testimony at trial *(cf., People v Kehn,* 109 AD2d 912, 915).

We also reject the arguments raised by defendant in his *pro se* brief. One argument is premised on the erroneous assumption that he was convicted of manslaughter in the first degree based on "extreme emotional disturbance" under Penal Law § 125.20 (2). In addition, defendant's contention, that his conviction for assault cannot be sustained because he did not intend to injure Cordero, is without merit due to the provision for transferred intent under Penal Law § 120.05 (2).

Judgment affirmed. Mahoney, P. J., Casey, Weiss, Yesawich, Jr., and Levine, JJ., concur.

---

* The fact that the Grand Jury testimony of the two witnesses who were not called at trial was submitted by the Public Defender to this court as part of the record on appeal is also indicative that the material was turned over as promised.